# Exhibit 66

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STATE OF NEW YORK, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,<br><br>    Defendants. | 20-CV-5770 (JMF) |
| NEW YORK IMMIGRATION COALITION, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>DONALD J. TRUMP, *in his official capacity as President of the United States*, et al.,<br><br>    Defendants. | 20-CV-5781 (JMF) |

## Expert Reply Declaration of Mr. John Thompson

### I. Introduction

1. On July 21, 2020, President Trump issued a Memorandum for the Secretary of Commerce on *Excluding Illegal Aliens from the Apportionment Base Following the 2020 Census* (in the remainder of my statement, I will use the term "Memorandum" to refer to this document).

2. I prepared and executed a declaration for this case on August 6, 2020 ("Declaration").[1] In my Declaration, I stated: "It is my opinion that the effects of the Memorandum on the current macro environment are likely to be as great if not greater than the addition of a citizenship question. Therefore, immigrants and the families of immigrants will be reluctant to participate in the Nonresponse Followup ("NRFU") and many will not be enumerated. It is also likely, in my opinion, that this reluctance to participate will extend to other hard-to-count populations as well. The issuance of the Memorandum has significantly increased the risk of larger total and differential undercounts, relative to previous censuses."

3. The Census Bureau conducted the 2019 Census Test, a nationally representative randomized experiment designed to study the potential impact on self-response of including a citizenship question on the 2020 Census questionnaire.[2] This was a well-designed randomized control test that compared the effects of adding a citizenship question to the 2020 Census questionnaire. I have carefully read the final report for this test, and the results are consistent with and, in fact, bolster the opinion that I expressed in my Declaration.

4. Because the test found that there was no statistically significant difference in overall self-response rates between households that received a questionnaire with the citizenship question and those that received a questionnaire without the citizenship question, the Census Bureau concluded that the addition of a citizenship question would not have affected staffing needs for NRFU. However, the Census Bureau, by design, did not investigate what effect the inclusion of the citizenship question would have on increasing undercounts of immigrant and hard-to-count communities. Furthermore, as I will discuss below, adequately staffing NRFU is not sufficient to obtain a complete and accurate enumeration of the traditionally hard-to-count populations.[3]

5. Importantly, the 2019 Census Test contained additional findings that I believe are relevant to understanding the likelihood that the Memorandum will negatively impact response rates, and the potential for the Memorandum to significantly increase the risk of larger and total undercounts relative to previous censuses.

6. In particular, the 2019 Census Test found that in some areas and for some subgroups, there were statistically significant lower self-response rates for the test questionnaire with

---

[1] *See State of New York, et al. v. Trump, et al.*, 20-CV-5770 (JMF), and *New York Immigration Coalition, et al. v. Trump, et al.*, 20-CV-5781 (JMF), Doc. 57.

[2] US Census Bureau, *2019 Census Test, Final Report*, December 30, 2019.

[3] It should be noted that if the Census Bureau fails to meet its hiring goals for NRFU, then undercounts would most likely follow.

2

    the citizenship question than for the test questionnaire without the citizenship question. These differences were observed for the following:
- Mail respondents.
- Tracts designated to receive bilingual materials.
- Tracts with greater than 4.9 percent noncitizens.
- Tracts with greater than 49.1 percent Hispanic residents.
- Tracts with between 5.0-20.0 percent Asian residents.
- Housing units within the Los Angeles Regional Census Center and New York Regional Census Center boundaries.

7. In addition, the proportion of those who identified as Hispanic (and were listed as the first person on the questionnaire) was statistically significantly lower for the treatment with the citizenship question.

8. These results indicate that the citizenship question would have seriously affected the propensity of many of the hard-to-count communities to self-respond to the 2020 Census. As I discussed in my Declaration, it would follow that they would also be less likely to participate in NRFU resulting in undercounts of immigrants and the families of immigrants, as well as all of the traditionally hard-to-count communities. Accordingly, there would be a significant risk that these undercounts would be larger than were observed in previous censuses.

9. In conclusion, the 2019 test further demonstrates that the addition of a citizenship question to the 2020 Census questionnaire would lower self-response for populations at risk of being undercounted. This bolsters my opinion that the Memorandum will have a similar, if not greater, effect on the macro environment in which the 2020 Census is being conducted, particularly for NRFU.

10. The Census Bureau must do a lot more than simply hire enough enumerators to meet their staffing goals for NRFU in order to achieve a fair and accurate count of all populations and areas. They and their partners[4] must create the kind of macro environment that convinces the traditionally hard-to-count populations to fully participate in the 2020 Census, and importantly to accurately respond in NRFU.

---

[4] In my original Declaration, I discussed the Census Bureau's partnership program. These partners include advocacy organizations, local governments, religious leaders, and many other community organizations. The Census Bureau recruits these partners to help deliver messages to the communities that they work with about the importance of responding to the census and the confidentiality of these responses. A critical component of the message from trusted voices is that the Census Bureau does not share any identifiable information with any outside entities including law or immigration enforcement.

3

11. The Memorandum is a major barrier preventing the Census Bureau and its partners from creating such a macro environment. Furthermore, it is my opinion, that a timely ruling from a court enjoining the Memorandum would greatly help the Census Bureau and its trusted partners in their efforts to convince hard-to-count populations, such as immigrant populations, that they can trust the Census Bureau and should respond to the census.

12. As explained in my Declaration, the role of trusted partners was developed during my tenure at the Census Bureau before the 2000 Census, and used to great effect in both the 2000 and 2010 Censuses to help reach hard-to-count populations. The Memorandum is limiting what has previously proven to be a very effective program to help increase census responses because it undermines the message that the Census Bureau is trustworthy and is not seeking to single out immigrants or individuals without legal status.

13. A court order enjoining the Memorandum would mitigate the damage because it would allow trusted partners to better explain during their outreach that all individuals will in fact be counted for apportionment, and bolster the advocacy that these partners do within their communities about the trustworthiness of the Census Bureau – supporting the point that the Census Bureau is not singling out immigrants and individuals who do not have legal status. Messaging refuting the proposal in the Memorandum would help improve the effectiveness of efforts by the Census Bureau and its trusted partners to convince individuals to respond to the 2020 Census during NRFU. And it would help the Census Bureau better carry out its mission to conduct a fair and accurate enumeration in the 2020 Census.

Executed on August 24, 2020 at Bend, Oregon.

I declare under penalty of perjury that the foregoing is true and correct.

John Thompson